### MANCHESTER *v.* BURNS & TRUSTEE.

State aid, furnished to the family of a volunteer in the United States service, does not stand upon the same ground as aid furnished to a pauper.

Under the statutes of this State, no State aid can properly be furnished to the families of such volunteers, after the discharge of such volunteer, nor can the State properly reimburse money thus paid by cities or towns.

Where such aid had been furnished by plaintiff to defendant's family after his discharge, the plaintiff having no knowledge of such discharge, and the defendant knowing that such aid was being furnished to his family and not giving the plaintiff notice of such discharge and not returning to his family, plaintiff may recover back the money thus paid, of the defendant.

Bounties, voted by the town to encourage volunteers to enlist, cannot, while in the hands of the town, be holden by the creditors of the volunteer upon the trustee process.

But, after the bounty has been paid over to the volunteer or to a third person by his order, it ceases to be bounty, but stands like any other money, or any other indebtedness, and can then be held on the trustee process.

A trustee will be charged, when the debt he owes the principal defendant is solely for household furniture that was exempt from attachment while in the defendant's hands.

ASSUMPSIT. Action tried by the court and the following facts were found :

Defendant is, and for five years has been, a resident of Manchester. He enlisted as a private in the 3rd Regiment of N. H. Volunteers, and was discharged from the service, Sept. 27, 1862. While in the service, and up to the first of November, 1863, his family received State aid from the city of Manchester, at the rate of $12.00 per month.

This action is brought to recover the amount so furnished to his family after his discharge. For the purpose of this case only, it was admitted that the city had no knowledge of defendant's discharge until said first of November, 1863, and that the city refused to furnish such aid as soon as they were notified of said discharge. It is also admitted, for the purpose of this case only, that defendant knew that his family were thus receiving aid after his discharge, and did not notify the city authorities of such discharge.

The plaintiff claims to recover the whole amount of aid thus furnished subsequent to the defendant's discharge. The defendant claims that none of this can be recovered; but if any, that at most only what was paid after the expiration of six months from the date of the discharge, can be recovered.

The trustee is the attorney of the defendant, who has obtained for him and now holds $75.00, which he obtained as bounty from the State, and also, a small amount which was due the defendant as back pay, at the time of his discharge. The State offered $100 bounty, $25 of which was paid at the time of enlistment, and the balance was to be paid when defendant's term of service expired, or when he was discharged.

The questions, whether the defendant is liable and the trustee chargeable upon the foregoing facts, were reserved and assigned to the Law Term.

*Parker & Johnson*, for plaintiff.

I. The case shows that the money was paid to the defendant under a mistake of the facts. And money so paid by mistake can be recovered back by an action for money had and received. This subject is fully discussed in the case of *Lockwood* v. *Kelsea*, 41 N. H. 185; *Lazell* v. *Miller*, 15 Mass. 207.

II. Although a gratuity may not be recovered back in an action of this kind, yet this could not have been a gratuity any longer than the defendant remained in the service, nor even in this case while he was in the service, as the money was paid under the requirement of law. Laws of N. H. 1861, chap. 2480; same, 1862, chap. 2584.

III. The trustee is chargeable in any case for money in his hands, when "the principal is entitled to receive the same on demand. 5 N. H. 519.

*Morrison, Stanley & Clark*, for defendant.

In this case "State aid" was furnished the defendant's family under the acts approved July 4, 1861, and July 9, 1862. Laws of N. H. 1861, chap. 2480; same, 1862, chap. 2584.

I.   These statutes provide that aid shall be furnished the families of volunteers who have been or may be mustered into the service of the United States, in certain cases, and there is no limit as to the length of time during which such aid shall be rendered.   The only limit is as to the amount which shall be reimbursed by the State, to the town or city furnishing the same.   From this provision, it is apparent that towns and cities may furnish such aid after the volunteer has received his discharge, and it is provided that in such cases the State will only reimburse such aid as is furnished within six months after the discharge.

The reasonable construction is, that towns and cities shall furnish such aid during such period as the families of volunteers may need it ; and in this case it is to be presumed in the absence of any evidence to the contrary, that the assistance was legally and properly furnished, and that the family of the defendant was entitled to the same.   The fact that the city of Manchester cannot recover the full amount of the State is not material.

II.   This aid is rendered, not to the volunteer himself, but to his family.   If he has no family dependent on him for support, he is not entitled to it.   The aid in this case was not furnished to the defendant, and consequently it cannot be recovered back from him.

III.   The assistance rendered is similar to aid furnished a pauper, and cannot be recovered back.   *Charlestown* v. *Hubbard, Adm'r.*, 9 N. H. 195.

IV.   The money was not paid under such a mistake of facts as would entitle the plaintiff to recover it back in any case, because, with reasonable and proper diligence, the plaintiff or its agents might have easily ascertained all the facts in the case.   *Peterborough* v. *Lancaster*, 14 N. H. 389.

SARGENT, J.   The first question that arises here is as to the liability of the principal defendant.   The State aid was furnished in this case to the defendant's family under the provisions of chap. 2480, Laws of 1861, and chap. 2584, Laws of 1862.   These statutes provide that aid shall be furnished the families of volunteers who have been or may be mustered into the service of the United States in certain cases ; and no limits are fixed in the statutes, in terms, as to the amount the towns shall pay per week or per month to such families, or the length of time during which it may be paid.

But there is a limit as to the amount which shall be reimbursed by the State to the town or city furnishing the same.   By the act of 1861, sec. 1, such aid is to be furnished to the families of such soldiers, only "provided such persons are indigent and stand in need of such relief," and, by the act of 1862, sec. 1, "provided such persons are indigent and unable to support themselves and stand in need of such relief, and the same is imperatively demanded by the circumstances of the case ; and provided also, that, in all cases where any soldier shall for no good reason neglect or refuse to pay or allot at least one-quarter part of his monthly pay for the aid of those dependent upon him, relief shall be afforded only to prevent extreme destitution."   And both acts provided that no

disabilities of any kind shall be created by reason of aid so furnished and received.

Both acts provide that the State shall reimburse sums thus paid at a certain rate, not exceeding in all twelve dollars per month, for the whole family of, and all dependents upon, any one volunteer. And it seems quite plain that the original intention was that the towns should not exceed the sums which were thus to be reimbursed to them, nor continue the payments after the death or discharge of the inhabitant who had thus volunteered; because the act of 1862, sec. 4, provides that any city or town may apply money as provided in the first section for the aid of the widow and children of such inhabitant thus mustered into service, who may have died in the service, or for the aid of such inhabitant himself, who may have returned home discharged from disability, and that the sums so expended shall be reimbursed by the State, &c., provided that there shall be no reimbursements of more than eight dollars per month for any such disabled inhabitant, nor of expenditures made more than six months after the death or discharge of such inhabitant.

This aid to the family of the volunteer did not stand upon the same footing of aid furnished to a pauper. It was really State aid; was furnished by the State, and the towns were made the agents of the State for disbursing it in the first instance, under certain regulations and restrictions. That it was not intended that towns or cities should continue this aid to the family of the volunteer after his discharge in the first instance, is evident from the express provisions of the statute of 1862, authorizing it to be done in certain cases. No such express authority needed to be given, if there was any general authority to do the same and more before that statute was passed. It is also evident, we think, that towns were not, and were not intended to be, authorized to pay this bounty to the families of volunteers after the discharge of such volunteer, from the considerations that induced the State to grant this aid in the first place. The pay of $13 per month, which was the legal pay of the common soldier, would be little inducement, so far as pay was concerned, to the large class of mechanics and other laboring classes, who could earn twice that amount at home, but who were needed in the emergency of war to fill the Union armies with able, intelligent and patriotic men; and the State, in order to compensate such of these classes as had families to be supported at home, which were dependent upon the husband and father for such support, and to enable them to volunteer in their country's defence without the fear of their families suffering for the means of subsistence, in their absence, made provision to aid the family of the volunteer, while he was sacrificing the very means that were necessary to support them, by going into his country's service.

But, when he should be discharged, he could return to his former avocations and support his family without the State aid, the same as he did before he volunteered. The reason that called for the State aid would no longer exist after the volunteer was discharged, if not disabled to pursue his ordinary avocations; and, in the law of 1862, provision was made for relief in cases of discharge from disability, and for assistance to be rendered to the family, in case of his death in the service. We

do not understand that any provision is made by the laws of 1862, or anywhere else, that warranted the assistance which was rendered in this case after the discharge of the defendant. It does not appear that he was discharged on account of any disability. Nothing in the case or in the argument of counsel would indicate that such was the fact. But even if that were so, it would not justify the aid here furnished. If the volunteer *dies*, then aid may be furnished his family to a certain amount and for a limited time. And if he is discharged well and sound, there is no occasion for such aid, because he has the same means of support, he had before he enlisted or volunteered, both for himself and family, and we think the intention clearly was that the aid to the family should cease when the service of the volunteer ceased.

But when the volunteer is discharged on account of disability, then the statute provides that *he*, not the family, may be aided for six months after such discharge. There is no provision anywhere for reimbursing money paid by any town or city as aid to the family of a volunteer after his discharge; nor was it intended that towns or cities should furnish aid in such cases, to families. The assistance rendered to defendant's family, after his discharge, was therefore without warrant of law; and the question is, can it be recovered back of defendant?

Neither of the statutes (of 1861 or 1862), in terms, authorizes any aid to be furnished to the family of any volunteer while he is in the service, unless such family is indigent and stands in need of relief. And yet we have seen that such aid was intended rather as compensation in part for the services of the person upon whom the family is dependent, rather in the nature of a bounty to encourage and procure volunteers, than as a charity grudgingly given because the law required it. It stands upon different grounds from the relief furnished to paupers, and hence our towns and cities, by general consent, have been somewhat more liberal in the application of this law than they are in cases of paupers. And we are not disposed to censure them for this course.

But whether it be considered in the nature of compensation, of bounty, or even as a gratuity, it was afforded only upon the ground that the defendant was a volunteer and was actually engaged in his country's service; and it was only in case of such services that such aid was rendered or authorized, and it could not have been intended that such aid should continue longer than the term of service.

Was the money then paid in this case under such a mistake of fact on the part of plaintiffs as to entitle them to recover? In *Peterborough* v. *Lancaster*, 14 N. H. 389, it was held, that, where money was paid with a full knowledge of all material facts or with the means of such knowledge, it cannot be recovered back on account of a mistake in the law; but that money paid in ignorance of a material fact and without reasonable means of ascertaining it, may be recovered back; and that it will be presumed that money was paid with a full knowledge of the facts in the absence of evidence to the contrary. Here the case finds that there was no such knowledge in fact on the part of the city, and it would not seem reasonable to require the city to keep watch of every soldier that went forth from it, scattered as they are through all the land and

constantly changing their position, and to know whether he was discharged or not, and, if so, when; and more especially as this fact is always within the knowledge of the volunteer, and one that could be so easily communicated by him either directly or through his family, who are, as he knows, receiving this aid upon the ground that he is engaged in the defence of his country, while he, as it would seem, instead of returning home to look after his family, went to seek his fortune elsewhere.

But the defendant says that this aid, being furnished to his family and not to himself, cannot be recovered of him. The aid furnished must be presumed to have been necessary and proper for his family, and we have seen that this case stands upon different grounds from that of aid rendered to a pauper; and it is therefore not material to consider whether, if the aid had been furnished to defendant's family under the proper laws, it could or not be recovered back. The plaintiffs paid this money to the defendant's use and for his benefit, in ignorance of a material fact which, if it had not existed, rendered the aid furnished proper and lawful, and what the city were bound to furnish; but, the fact being otherwise, it was money which the city were under no obligation to furnish or the State to reimburse, and which defendant had no right to claim or receive, and where it was the defendant's fault, if not his fraud, that the city was not notified of this material fact. We conclude, therefore, that defendant is liable in this action for the whole amount of aid furnished to his family from the time of his discharge.

Is the trustee chargeable? It was held in *Brown* v. *Heath, Pr, and Clarkville, Tr.*, Coos Co. July Term, 1863, that the town was not chargeable as trustee of Heath, on account of a certain bounty which the town had offered to volunteers to induce them to enlist in the service of the United States, under one of the calls of the President for volunteers during the present war. After the bounty had been offered by the town, Heath had volunteered and been accepted and mustered into service, and was thus entitled to the bounty, which had not been paid. That decision was based upon grounds of public policy alone. It was thought that it would tend to discourage enlistments if it was understood that the bounties, offered by the State and by the several towns to secure the personal services of the volunteer, could be attached upon the trustee process, and kept from his possession by his creditors. Hence, it was held that this bounty could not be holden, while in the hands of the town, by Heath's creditors in this way. The same reasons of public policy would operate in the same way and for the same cause, to secure to the volunteer that portion of the bounty that was to be paid at the close of the term of service, or upon being discharged, as to any other part. It would undoubtedly discourage a large class of debtors from volunteering if it was understood that any part of these bounties, or either of them, could be taken from them by their creditors. *Salus populi suprema lex.*" Broom's Leg. Max. 1.

But while this rule of public policy applies while the bounty is in the hands of the town or State, it does not apply when the money has passed into a third person's hands by the consent and authority of the volunteer, or when the volunteer has received his bounty and loaned or de-

posited it elsewhere. The rule of public policy would not extend further in this case than the express provisions of a statute would in a similar case. For instance, the wages of the laborer for the last fifteen days before the service of a trustee writ are exempted by statute from liability on that process. But this exemption does not follow these wages into the hands of a third person, not even of an attorney employed by the laborer to collect such wages. This question is settled in *Cook* v. *Holbrook*, 6 Allen, 572, which is strongly supported by *Maxwell* v. *McGee*, 12 Cush. 137. The statute of Massachusetts provided that "where the wages for the personal services of a defendant are attached for a debt or demand other than for necessaries furnished him or his family, there shall be reserved in the hands of the trustee a sum not exceeding twenty dollars, which shall be exempt from such attachment."

In *Cook* v. *Holbrook supra*, the defendant had labored for Fogg, Houghton & Co., and they being indebted to him for these services, he employed an attorney who brought suit and recovered judgment against them for the amount of such services, which judgment was paid by them to said attorney, who was trusteed in this suit by a creditor of Holbrook. *Dewey, J.*, in delivering the opinion, says : "The supposed trustee was not the debtor of Holbrook for any wages due him for personal labor. His sole indebtedness was for money which he had received on a judgment debt against Fogg, Houghton & Co. This judgment merged the prior simple contract debt for wages for labor. It was no longer a claim for wages. The debtor who owed for personal services was by the judgment fully discharged from his indebtedness. The supposed trustee, on the receipt of this money from the officer, was, in no proper sense, a mere servant of the creditor receiving coin or bank bills, which when received were the property of the creditor. On the contrary, such money at once vested absolutely in the attorney receiving the same. A new debtor to Holbrook was created. The attorney was under a liability to account to Holbrook and might have availed himself of any set-off for any previously existing demand, held by him against Holbrook."

In *Maxwell* v. *McGee supra*, it was held that gold and silver coin, collected by an attorney at law on a claim due his client, cannot be attached in the ordinary way, in his hands as the property of the client, because the obligation of the attorney to pay it over is but a chose in action, and the specific coin does not vest in the principal. In the opinion *Shaw. C. J.*, says : "Money has no ear mark. In this instance the coin was the currency in which the attorney received the debt, but it would not vest the title to the coin in the creditor unless it was put into his possession by being paid to him."

So, in *Meserve & al.* v. *Page & Tr.*, Coos Co. July Term, 1864, it was held that the trustee was chargeable, although his indebtedness to the principal defendant was solely for articles of household furniture which before the sale could not be attached by Page's creditors.

So, in the case before us, while the bounty is due from the State or the town to the volunteer, public policy requires that it should be held exempt from attachment on the trustee process ; but, when it has been paid over to the volunteer, and he has loaned it, or deposited it with

some third person, it is no longer bounty, but simply money, having no ear mark by which it may be distinguished from any other money, or from money derived from any other source, and hence the exemption, which before existed either by statute or on grounds of public policy, cannot follow this bounty into the hands of any third person after it has once been paid.

Nor does it make any difference if the volunteer order the money or bounty to be paid by the State or town to an attorney or any other third person. His claim on the attorney is not for bounty or for any particular money as bounty, but only for so much money, and the attorney may file in off-set to this claim, any claim which he may hold against the volunteer, the same as though the money were derived from any other source. In *Adams* v. *Newell & Tr.*, 8 Vt. 190, it is held that the money of a pensioner under the law of Congress, in the hands of his agent or attorney appointed to receive it from the disbursing agent, and received as pension, is not liable to the trustee process, but it was upon the ground that the act of Congress under which the pension was granted not only exempted it from attachment, but was intended to protect the pension until it actually reached the hands of the pensioner; and the query is raised, though not decided, whether the pension would not be protected after it was reduced to possession by the pensioner.

But we do not see that the reasoning in that case applies with any force here. There is no necessity, certainly, in case of State or town bounties, for the appointment of an attorney to receive the bounty. The soldier may as well receive his own bounty, without having it pass through the hands of an attorney, if he choose. It may be a matter of convenience but not of necessity, any more than in the collection of other claims or demands where no suit is necessary. The State or the town will as soon pay directly to the volunteer, in this case, as to an attorney. We think the back pay also in the hands of the attorney must stand on the same ground.

*Trustee charged for amount in his hands.*